1            UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3      HONORABLE GEORGE H. KING, U.S. DISTRICT JUDGE

4                   – – –

5

6

7                           )

UNITED STATES OF AMERICA,     )

8                           )

               PLAINTIFF,   )

9                           )

       vs.              ) No. CR16-489-GHK

10                          )

JULIO CARO,               )

11                          )

             DEFENDANT.   )

12 _____)

13

14

15       REPORTER'S TRANSCRIPT OF SENTENCING

16          LOS ANGELES, CALIFORNIA

17         MONDAY, NOVEMBER 7, 2016

18             11:04 A.M.

19

20

21

22      _____

23      CINDY L. NIRENBERG, CSR 5059, FCRR
         U.S. Official Court Reporter
24         255 East Temple Street
         Los Angeles, CA 90012
25         *www.msfedreporter.com*

```
1    APPEARANCES OF COUNSEL:

2

3    FOR THE PLAINTIFF:
                         OFFICE OF THE UNITED STATES ATTORNEY
4                        BY: POONAM KUMAR,
                             ASSISTANT U.S. ATTORNEY
5                        312 NORTH SPRING STREET
                         13TH FLOOR
6                        LOS ANGELES, CA 90012
                         213-894-2434
7

8

9

10

11

12   FOR THE DEFENDANT:
                         OFFICE OF THE FEDERAL PUBLIC DEFENDER
13                       BY: JENNIFER UYEDA,
                             DEPUTY FEDERAL PUBLIC DEFENDER
14                       321 EAST 2ND STREET
                         LOS ANGELES, CA 90012
15                       213-894-2854

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1            LOS ANGELES, CALIFORNIA; MONDAY, NOVEMBER 7, 2016

2                            11:04 A.M.

3                         - - - - -

4            THE CLERK:  Calling item Number 1, CR16-489, United

5    States of America versus Julio Caro.

6            Counsel, state your appearances for the record.

7            MS. KUMAR:  Good morning, Your Honor.  Poonam Kumar

8    on behalf of the United States.

9            THE COURT:  Yes, good morning.

10           MS. UYEDA:  Good morning, Your Honor.  Jennifer Uyeda

11   on behalf of Julio Caro, who is present and on bond.

12           THE COURT:  Yes, good morning.  And Mr. Caro does not

13   need the services of an interpreter; is that right?

14           MS. UYEDA:  Correct, Your Honor.

15           THE COURT:  All right.  This matter is on the Court's

16   calendar to consider the Pre-sentence Report and for imposition

17   of sentence.

18           Any legal cause why sentence should not now be

19   pronounced?

20           MS. UYEDA:  No, Your Honor.

21           THE COURT:  Is Julio Caro your true name?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Mr. Caro, have you had an opportunity to

24   review the Pre-sentence Report and recommendation prepared by

25   the probation officer, as well as all of the position papers re

1    sentencing prepared by the parties?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Have you had an adequate opportunity to

4    review those matters with your lawyer?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And are you ready to proceed with

7    sentencing at this time?

8              THE DEFENDANT:  Yes, I am.

9              THE COURT:  Ms. Uyeda, I take it you have, of course,

10   considered all of the probation officer's filings, as well as

11   the filings of the parties?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  And have you had a satisfactory

14   opportunity to review all of those papers with your client?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  And to the extent that he may have any

17   additions, modifications or other objections, you would have

18   reflected those in your own papers?

19             MS. UYEDA:  Correct, Your Honor.  I do have one note

20   on a condition of supervised release.

21             THE COURT:  All right.

22             MS. UYEDA:  Condition Number 5, Your Honor, I did not

23   formally object to this in our position paper, but I just

24   wanted to note something for the Court.

25             It prohibits the defendant from engaging as a whole

1    or partial owner, employee, or otherwise, in any business

2    involving movie or video production, investment programs or any

3    other business involving the solicitation of funds or cold

4    calls to customers without the express approval of the

5    probation officer.

6            And maybe we didn't object to it because it includes

7    "without the express approval of the probation officer," but I

8    raise this just because I think it's clear with Mr. Caro and

9    with the probation office that he will only be working on the

10   physical production side of a film or commercial or movie.  He

11   will not be working on the business side, but he may not know

12   what the business side is doing and how they are soliciting

13   funds or marketing or any of that.

14           And so I just raise that because I tried to think of

15   different language and I was unable to, but I just wanted to

16   raise that for the Court.

17           THE COURT:  I think what we can do is use this

18   language.  We can make it very clear on the record so that the

19   probation officer understands that he would have to have some

20   personal involvement with either soliciting funds or cold

21   calling customers for money or otherwise engaged in any aspect

22   of investing money or handling or managing the money of it, and

23   that with that clarification, when he has something, if he has

24   something, he should talk to his probation officer, who, of

25   course, will comply with the clarification I will make and I

1    have already made.

2              MS. UYEDA:  Thank you, Your Honor.

3              THE COURT:  All right.  Other than that, you have no

4    objection to the conditions of supervision?

5              MS. UYEDA:  Correct, Your Honor.

6              THE COURT:  And so I have fully considered your

7    position papers, Ms. Uyeda.

8              You have no objection to the probation officer's

9    guideline calculations, but you do have various 3553(a)

10   variance arguments, including aspects of Mr. Caro's personal

11   history, professional history; you believe that the significant

12   financial pressures may be a mitigating factor; you think his

13   behavior is abhorrent; you believe that he had cooperated and

14   had demonstrated extraordinary acceptance of responsibility by

15   not only early cooperation and pleading guilty on the charges

16   but also cooperation with the FBI even prior to counsel, and

17   then having cooperated with Yucaipa even before law enforcement

18   involvement; you believe he has had some post-offense

19   rehabilitation and that he has received punishment as a result

20   of various adverse effects upon his life and that there is no

21   need for specific deterrence; and you're seeking a sentence of

22   three years' probation, 300 hours of community service, and 18

23   months of home detention, in addition to whatever conditions

24   may have been suggested for community supervision by the

25   probation officer.

1          Does that adequately summarize your position?

2          MS. UYEDA:  It does, Your Honor.

3          THE COURT:  All right.  You may be heard on behalf of

4   Mr. Caro at this time.

5          MS. UYEDA:  Your Honor, in my position paper I

6   discussed at length why a prison sentence is not needed to

7   deter Mr. Caro from committing another similar offense, but I'd

8   like to address the concept of deterring others.

9          I understand the concept that a prison sentence may

10  deter other individuals from committing a similar offense.

11         It's this idea of sending a message through either

12  word of mouth or a press release or a news article, but I

13  propose that a more effective way to deter others and to send a

14  message to the public is actually through Mr. Caro's own words,

15  through his own teachings to students and to the community.

16         So by sending Mr. Caro out into the classroom to talk

17  about his experience, he is directly communicating and

18  persuading young people not to make the same mistakes that he

19  did because they are illegal, because they can destroy your

20  reputation and everything that you have built, because they can

21  destroy your marriage and your relationships with your family.

22         And students, I think, Your Honor, can relate to him

23  because he was just like them when he started out.

24         And we started looking into business ethics classes,

25  so through him they can see someone who's worked hard, who's

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   graduated from school and has had everything at one point in

2   their life but lost it through criminal conduct.

3          I think this method assures the Court that it has

4   reached individuals instead of an announcement that goes out to

5   the nebulous public.

6          We have gotten responses from deans of UCLA, USC,

7   Duke and Cornell but they wanted to wait for the disposition

8   from this case first before setting anything concrete up.

9          Today, Your Honor, is the last step in a very long

10  journey for Mr. Caro since he committed this crime and

11  confessed to Yucaipa, to the United States Government, to this

12  Court and to his family.

13         And what's important to Mr. Caro is to now publicly

14  deliver his apologies to everyone in the courtroom -- his

15  friends and family who have come and who have written letters

16  are present today -- and even to Mr. Burkle, even though he is

17  not present today.

18         In making an example out of himself, no matter how

19  difficult it is, he's truly handing down the invaluable lesson

20  to his children and to others that you must be accountable for

21  your actions.

22         And, Your Honor, I believe that he does this with

23  integrity and with honor, and I submit that that illustrates

24  Mr. Caro's true character, and that he will never put himself

25  in this position again.

```
1              THE COURT:  All right.  Thank you very much.
2              Mr. Caro, you have the right to personally address
3    the Court before I impose sentence.
4              Do you wish to be heard at this time?
5              THE DEFENDANT:  Yes, Your Honor.
6              THE COURT:  All right.  You may.
7              THE DEFENDANT:  Your Honor, I just wanted to comment
8    further that you've read letters provided by friends and
9    family.  I have been deeply, deeply troubled by this entire
10   affair but have come to accept and realize that I had made
11   certain actions -- or did actions that were illegal and
12   criminal, and that having that perspective going forward has
13   kind of given me a new sense of purpose and a new sense of
14   commitment to, you know, living the best life I can for my
15   family and for my children.
16             I want to publicly apologize to Mr. Burkle and former
17   colleagues at Yucaipa who were very supportive through my
18   career there, and just let everyone know that I apologize.
19             THE COURT:  All right.  Thank you very much.
20             On behalf of the United States, Ms. Kumar.
21             MS. KUMAR:  Yes, Your Honor.
22             As the government laid out in its sentencing
23   position, this is a serious crime.  The defendant stole nearly
24   $1.5 million from his business partner and in doing so abused
25   the position of private trust he maintained with that company.
```

1     But the government -- and the Sentencing Guidelines reveal, as

2     the Court has noted, a guideline range of 30 to 37 months, but

3     the government also recognizes that there are mitigating --

4              THE REPORTER:  Can you repeat that and slow down,

5     please.

6              THE COURT:  You have to slow down.

7              MS. KUMAR:  Sorry, Your Honor.

8              -- has requested a four-level variance from those

9     guidelines specifically based on the defendant's acceptance of

10    responsibility.

11             As Ms. Uyeda pointed out today and in her sentencing

12    positions and as the government pointed out, the defendant was

13    cooperative with Yucaipa and with law enforcement, particularly

14    from the very beginning and demonstrated what the government

15    characterizes as an extraordinary acceptance of responsibility,

16    keeping in touch with agents when traveling and otherwise

17    keeping them abreast and providing them documents.

18             In addition, his history and characteristics warrant

19    a variance in this respect, Your Honor.  He has no criminal

20    history, no apparent contacts with law enforcement and has

21    otherwise lived a law-abiding life.  The government does agree

22    that this conduct appears to be abhorrent.

23             Given all of those factors and the need to justify

24    and balance between general and specific deterrence -- and the

25    government does submit that general deterrence does warrant a

1    prison term in this case -- and the need to avoid unwarranted

2    sentencing disparities and to accord for just punishment, the

3    government believes a term of imprisonment of 18 months

4    followed by three years of supervised release is appropriate in

5    this case.

6          THE COURT:  All right.  Thank you very much.

7          I have fully considered the entire record in this

8    case.  I've heard from counsel and I have heard from the

9    defendant.

10          I start my process by calculating the guidelines.  Of

11   course, there are no disputes as to the guideline calculations

12   as such.  Base offense level is 6, 14-level increase for the

13   amount of loss, two-level increase for abuse of position of

14   trust, three-level decrease for acceptance of responsibility.

15   Offense level 19, Criminal History Category I would yield a

16   suggested range of 30 to 36 months' imprisonment.

17          I have also considered the other relevant 3553(a)

18   factors, including the nature and circumstances of this

19   offense, which involved Mr. Caro's stealing of money from his

20   investment partners for the purpose of personal use and, of

21   course, transported a portion of those funds in interstate

22   commerce, that is, the mail.

23          This occurred over an extended period of time.  While

24   I do not think that qualifies it as abhorrent, it is at least

25   uncharacteristic of him.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1      Nevertheless, this is something that just didn't

2  happen on a spur of the moment.  This wasn't just some

3  opportunity that created or presented itself.  This is

4  something that he did on a steady basis over a five-year

5  period, and he actually stole just about almost $1.5 million,

6  an extraordinarily large sum of money.

7      History and characteristics of this defendant shows

8  he is 57 years old now.

9      He has accepted responsibility for his actions, and

10  he has extraordinarily done so not only with his early

11  acceptance and cooperation with Yucaipa, although he had

12  initially lied to them, but he came clean, and then he also

13  came clean before involvement in law enforcement and has been

14  highly cooperative with law enforcement ever since.

15      He has substantial family and community support.  He

16  has two children, both of whom care for him, and he has been,

17  obviously, quite involved in their care throughout.

18      He appears to have lived an otherwise law-abiding

19  life other than this uncharacteristic lengthy episode, and he

20  has no prior criminal contact with law enforcement or with the

21  law and he has had prior consistent employment.

22      There is a need for the sentence imposed to reflect

23  the seriousness of this offense, which is extraordinarily

24  serious because this is the theft of a very large sum of money

25  over a lengthy period of time by someone who had abused his

1    trust to his investment partners in doing so, and on one

2    occasion also having lied about it.

3         There is a need to promote respect for the law in

4    this case.  Clearly, during this five-year period, Mr. Caro

5    demonstrated rampant disrespect for the law by his activity,

6    but that is somewhat mitigated not only by his conduct before

7    this happened and after it happened because of his

8    extraordinary acceptance of responsibility.

9         There is, of course, a need to provide just

10   punishment and to afford adequate deterrence.  While it does

11   appear the specific deterrence is less needed, I cannot say

12   that there is no such need because the lesson to be learned

13   must be learned so that the wrong lesson is not learned that

14   somehow it is okay to do so and then just plead for mercy from

15   the court and to receive some very minor sentence.

16        I agree with the government that general deterrence

17   is exceedingly important, particularly in these kinds of cases.

18   The public has to understand that even the so-called

19   white-collar crimes and the white-collar criminals have a

20   severe consequence to suffer in the event that there is a

21   serious criminal act.

22        And while I totally understand what Ms. Uyeda says

23   that going out and speaking with people in the community, young

24   folks, about ethics -- about business ethics, is important, I

25   don't agree with her notion that somehow one is either or the

1   other, that is, that necessarily there is no need for

2   imprisonment if this lesson is taught to others.  I think the

3   lesson is certainly more immediate, and perhaps it will be

4   learned much more readily if also the lesson is that there was

5   a severe consequence attached to it.

6          There is a need to protect the public from future

7   crimes of the defendant, but in this case, if he is adequately

8   suitably deterred, there does appear to be relatively minor

9   chances of his recidivism.

10         Educational, vocational training, medical care and

11  correctional treatment do not appear to have any further

12  applicability here or certainly not that it would have an

13  effect on the sentence.

14         The Court has available to it the full range of

15  sentences in this case.  There does not appear to be any other

16  pertinent policy statements.

17         I'm aware of the need to avoid unwarranted sentencing

18  disparity, as well as the need to provide restitution to the

19  victim in this case.

20         I spent quite a time thinking about this case.

21  Mr. Caro, to be perfectly honest, has some pluses and some

22  minuses.  Sometimes it seems that some of his pluses actually

23  are minuses.

24         While there is no question the pluses are that he

25  engaged in early and extraordinary acceptance of

1    responsibility, that he has no prior convictions and this is

2    clearly uncharacteristic, that he has been very remorseful and

3    he has undertaken rehabilitation efforts, and with the support

4    of family and the community, he is less likely, perhaps than

5    others, to reoffend, on the other hand, of course, this is a

6    very, very large sum of money which he took over a period of

7    time, and not that there's ever a good reason to steal, but the

8    fact that he took it so that he could maintain this aura of

9    success, so that he was spending it nicely for his family and

10    his livelihood, in my judgment is a rather poor excuse, a poor

11    reason for having committed a crime of this magnitude.

12           Moreover, he had every advantage.  This is the story

13    of the success of the American success.  His mother worked

14    hard, did everything to give him absolutely Number 1, 1st class

15    education at a place like Cornell University, providing him

16    with every opportunity so that he can do well, and he did do

17    well.  There is just no excuse for him to resort to crime.

18           I don't know how many times I have had individuals

19    come in here whose life was ruined the minute he or she was

20    born to a crack user, had no education, no guidance by any

21    parent, living in a place that resembled a war zone full of

22    gangs and drug dealing, drug dealers inside the home, including

23    parents, uncles.  Somebody like that had no chance from the

24    beginning.

25           And yet, Mr. Caro -- I'm not saying that those

1    individuals can be excused from the criminal act, they're not,

2    but certainly their circumstances are far different from every

3    advantage that Mr. Caro had.

4           And, as I said, he is otherwise an incredibly

5    successful American story from every angle, and, yet, despite

6    that advantage, he took further advantage by reaching into over

7    a million- -- almost a million-and-a-half dollars so that he

8    can enrich himself, he can make himself live a better life than

9    he was entitled to have.  That is a definite negative.  That is

10   not a positive, as far as I'm concerned, as I consider the

11   entire person, and he also abused his position of trust.

12          So I have, of course, considered the mitigation as

13   well as the aggravation in reaching my sentence, and having

14   considered all of these factors, the following is the sentence

15   of the Court.

16          It is ordered defendant shall pay the United States a

17   special assessment of $100, which is due immediately.  Any

18   unpaid balance shall be due during the period of imprisonment

19   at a rate of not less than $25 per quarter and pursuant to the

20   Bureau of Prisons Inmate Financial Responsibility Program.

21          It is ordered the defendant shall pay restitution in

22   the total amount of $1,487,529 to the Yucaipa Corporate

23   Initiatives Fund I.

24          Restitution shall be due during the period of

25   imprisonment at a rate of not less than $25 per quarter and

1    pursuant to the Bureau of Prisons Inmate Financial

2    Responsibility Program.

3            If any amount of the restitution remains unpaid after

4    release from custody, monthly payments of at least 10 percent

5    of the defendant's gross monthly income but not less than $500,

6    whichever is greater, shall be made during the period of

7    supervision.

8            Interest on the restitution order is waived because

9    it appears the defendant may not have the ability to pay

10   interest, but the payments may be subject to penalties for

11   default or delinquency.

12           Defendant shall comply with General Order 01-05.

13           All fines are waived as the Court finds that

14   defendant is unable to pay a fine in addition to restitution.

15           It is the judgment of the Court that the defendant,

16   Julio Caro, is hereby committed on Count One of the

17   single-count Information to the custody of the Bureau of

18   Prisons to be imprisoned for a term of 18 months.

19           Upon release from imprisonment, defendant shall be

20   placed on supervised release for a term of three years under

21   the following terms and conditions:

22           One, defendant shall comply with the rules and

23   regulations of the United States Probation Office, General

24   Order 05-02 and General Order 01-05, including the three

25   special conditions delineated therein;

```
 1            Two, defendant shall reside for a period -- strike
 2   that.
 3            Number 2 is stricken.
 4            The new Number 2 is during the period of community
 5   supervision, defendant shall pay the special assessment and the
 6   restitution in accordance with this judgment's orders
 7   pertaining to such payment;
 8            Three, the defendant shall not be employed in any
 9   capacity wherein he has the custody, control or management of
10   his employer's funds;
11            Four, the defendant shall not engage as whole or
12   partial owner, employee, or otherwise, in any business
13   involving movie or video production, investment programs or any
14   other business involving the solicitation of funds or cold
15   calls to customers without the express approval of the
16   probation officer prior to engaging in such employment;
17            Further, the defendant shall provide the probation
18   officer with access to any and all business records, client
19   lists, and other records pertaining to the operation of any
20   business owned in whole or in part by the defendant as directed
21   by the probation officer.
22            And as I indicated to Ms. Uyeda, this condition is
23   modified to the extent that it applies only to those actions
24   relating to anything having to do with finances or money to the
25   extent that Mr. Caro would have direct control or participation
```

1   in such activities;

2          Number 5, defendant shall cooperate in the collection

3   of a DNA sample from him;

4          Number 6, defendant shall perform 300 hours of

5   community service to be evenly divided during the period of his

6   supervision and in accordance with the directions of the

7   probation officer;

8          And, 7, defendant shall apply all monies received

9   from income tax returns to the outstanding court-ordered

10  financial obligation.

11         In addition, defendant shall apply all monies

12  received from lottery winnings, inheritances, judgments and any

13  anticipated or unexpected financial gain to the outstanding

14  court-ordered financial obligation.

15         The drug testing condition mandated by statute is

16  suspended based upon the Court's finding that the defendant

17  poses a low risk of future substance abuse.

18         Ms. Uyeda, do you agree that in light of the sentence

19  imposed by the Court and in light of the plea agreement that

20  there has now been an effective waiver of the right to appeal

21  his sentence?

22         MS. UYEDA:  Your Honor, may I have a moment, please?

23         THE COURT:  Sure.

24         Take a look at the plea agreement at paragraph 17.

25         MS. UYEDA:  Your Honor, it does appear by the plea

1  agreement that there is a waiver of appeal if there is a

2  sentence of -- a sentence of no more than 24 months.

3          THE COURT:  So you agree?

4          MS. UYEDA:  I agree.

5          THE COURT:  There are no other counts to dispose of,

6  right, Ms. Kumar?

7          MS. KUMAR:  That is correct, Your Honor.

8          THE COURT:  Ms. Uyeda, do you request a brief period

9  so that Mr. Caro can effect a self-surrender to the facility

10  designated?

11          MS. UYEDA:  Yes, please, Your Honor.  We would ask

12  for a date after the holidays in January.

13          THE COURT:  Ms. Kumar, any objection?

14          MS. KUMAR:  Not at all, Your Honor.

15          THE COURT:  My suggestion is Monday, January 9.

16          Would that be satisfactory to you, Ms. Uyeda?

17          MS. UYEDA:  Yes, please, Your Honor.

18          THE COURT:  Mr. Caro, you are ordered to surrender

19  yourself by no later than noon on Monday, January 9, 2017, to

20  the facility designated by the Bureau of Prisons for your

21  confinement.  And if there is no such designation by that time,

22  you are to surrender yourself to the United States Marshal of

23  this district by the same date and time.

24          Do you understand that?

25          THE DEFENDANT:  Yes.

1          THE COURT:  And he is on bond, and his bond will be

2     exonerated at the time of surrender.

3          Anything further at this time?

4          MS. UYEDA:  No, Your Honor.  Thank you.

5          MS. KUMAR:  No, Your Honor.  Thank you.

6          THE COURT:  All right.

7      *(Proceedings concluded 11:32 A.M.)*

8                              --oOo--

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1

 2

 3                          CERTIFICATE

 4

 5      I hereby certify that pursuant to Section 753,

 6   Title 28, United States Code, the foregoing is a true and

 7   correct transcript of the stenographically reported

 8   proceedings held in the above-entitled matter and that the

 9   transcript page format is in conformance with the

10   regulations of the Judicial Conference of the United States.

11

12   Date: JANUARY 9, 2017

13

14

15

16

17           /s/  Cindy L. Nirenberg, CSR No. 5059

18                        Official Court Reporter

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA